JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Nancy M. Awig, appeals the decision of the trial court granting summary judgment in favor of defendants-appellees, Bryan Slomovitz and Dawna Slomovitz. For the reasons that follow, we reverse and remand.
 {¶ 2} Awig initiated this premise liability lawsuit as a result of injuries she sustained when she fell on the Slomovitzes' property. In addition to suing the Slomovitzes, she sued John Doe and/or John Doe, Inc., the "owner, occupier, individual/entity in control of [the] property" on the date of the incident. Awig listed the individual/entity's address as unknown in her complaint, their identity and/or address was never revealed during the trial court proceedings and, thus, service of the complaint was never had upon the individual/entity. Awig never dismissed the Doe party and the trial court's final entry does not mention him.
 {¶ 3} Initially, we consider the finality of the trial court's order. Civ.R. 54(B) provides in relevant part the following pertaining to final orders in instances when multiple parties are involved in an action:
 {¶ 4} "* * * the court may enter final judgment as to one or more but fewer than all the claims or parties only upon an express determination that there is no just reason for delay. In an absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry or judgment adjudicating all the claims and the rights and liabilities of all the parties."
 {¶ 5} Here, the final entry does not state that "there is no just reason for delay." Nonetheless, the judgment was a final appealable order, as service was never perfected against the unnamed defendant. See Harris v. Plain Dealer Publishing Co.
(1988), 40 Ohio App.3d 127, 532 N.E.2d 192, citing Civ.R. 3(A) and 15(D).
 {¶ 6} Thus, we now consider whether the trial court properly granted summary judgment in favor of the Slomovitzes. Summary judgment is appropriate pursuant to Civ.R. 56(C) when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46.
 {¶ 7} The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment.Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259,674 N.E.2d 1164. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also,Mitseff v. Wheeler (1998), 38 Ohio St.3d 112, 526 N.E.2d 798. We review the trial court's judgment de novo using the same standard that the trial court applies under Civ.R. 56(C).Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.
 {¶ 8} In order to defeat a motion for summary judgment on a negligence claim, a plaintiff must establish that a genuine issue of material fact exists as to whether: 1) the defendant owed a duty of care to the plaintiff; 2) the defendant breached that duty; and 3) the breach of duty proximately caused the plaintiff's injury. Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 680, 1998-Ohio-602,693 N.E.2d 271. It is well-settled law that a property owner owes an invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden defects. Paschalv. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474.
 {¶ 9} In their motion for summary judgment, the Slomovitzes argued the following: 1) that they did not have a duty to advise Awig of any unknown defects on their property;[1] 2) that they did not have a duty to advise Awig of defects known to her; 3) that the defect was open and obvious; and 4) that Awig assumed the risk.
 {¶ 10} In support of their motion for summary judgment, the Slomovitzes relied upon Awig and Bryan's deposition testimony. Awig testified that on the evening of November 25, 2002, she was leaving the Slomovitzes' house after babysitting their three young children.[2] Awig resided immediately next door to the Slomovitzes, and was walking across their lawn to return to her home. She explained that as she was walking across the Slomovitzes' lawn, which was covered with leaves, she tripped on a brick, fell and twisted her ankle. Awig testified that the area was not lit, that the brick was underneath leaves, and she did not see the brick until after she fell. Awig explained that the brick she tripped on was similar to bricks that were placed in a circular border around a tree in the Slomovitzes' front yard.
 {¶ 11} Awig "crawled home because [she] was unable to walk," and her sister drove her to the emergency room. She suffered a broken ankle, had surgery the following day and wore a cast for the next 11 weeks.
 {¶ 12} Awig admitted that there was a sidewalk upon which she could have traversed, but it was quicker to walk across the lawn.
 {¶ 13} Bryan testified that the bricks in the border around the tree had been there since he moved into the house in 1997 and that they were "sunken" into the ground. Prior to Awig's injury, however, Bryan was aware that on occasion, some of the bricks were in places other than in the ring around the tree. Bryan explained that that occurred as a result of his stepson and/or his children playing around the tree and picking up the bricks to look for insects. Bryan testified that occasionally he or Dawna would check the yard for bricks out of their place. For example, Bryan explained that when he cut the lawn he would check for bricks in the grass.
 {¶ 14} Upon being shown a photograph of the brick Awig claimed she tripped on and its place in the yard, Bryan agreed that it could have been a brick from the ring around his tree and that if it was it was not in its proper place.
 {¶ 15} Bryan testified that he did not know that Awig had been babysitting his children on the evening of the incident or on any other occasion.[3] Bryan also testified that Awig and Dawna were friends, so he was sure that Awig had been to his house before. He testified, however, that he had never instructed Awig that she was not to walk across the lawn.
 {¶ 16} In addition to the deposition testimony just summarized, the Slomovitzes also relied upon, in support of their motion for summary judgment, Exhibit A, a portion of an evaluation from the Cleveland Clinic relative to Awig's multiple sclerosis, which was diagnosed in 1999. Much of the Slomovitzes' argument in their motion was relative to Awig's multiple sclerosis (e.g., that given her condition she assumed the risk).
 {¶ 17} Awig, along with her opposition to the motion for summary judgment, filed a motion to strike the unauthenticated Exhibit A. The trial court never ruled on Awig's motion to strike. We agree with Awig that Exhibit A was not properly before the court.
 {¶ 18} Civ.R. 56(C) provides the evidence a court is permitted to consider in support of, or in opposition to, a motion for summary judgment: the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact.
 {¶ 19} Where supporting documentary evidence falls outside of Civ.R. 56(C), the proper method for introducing such evidence is to incorporate it by reference into a properly framed affidavit.Blanton v. Cuyahoga Cty. Bd. of Elections, 150 Ohio App.3d 61; 2002-Ohio-6044, 779 N.E.2d 788.
 {¶ 20} Here, the Slomovitzes simply attached Exhibit A to their motion for summary judgment, without any accompanying affidavit. Moreover, there was no testimony, expert or otherwise, that Awig's medical condition was the cause of, or contributed to, her fall. Awig's testimony was that she fell as a result of tripping over a brick and that she was not instructed to use any walking device or aid at the time of the incident. As such, we disregard the Slomovitzes' blanket arguments that Awig's multiple sclerosis was the proximate, or a contributing, cause of her fall.
 {¶ 21} In regard to the Slomovitzes' first argument, that they had no knowledge of the brick, we find that a genuine issue of material fact exists as to that issue. In his deposition testimony, Bryan testified that, prior to Awig's injury, he was aware that on occasion some of the bricks were in places other than in the ring around the tree. Bryan explained that that occurred as a result of his stepson and/or his children playing around the tree and picking up the bricks to look for insects. Bryan testified that occasionally he or Dawna would check the yard for bricks out of their place. For example, Bryan explained that when he cut the lawn he would check for bricks in the grass. Upon being shown a photograph of the brick Awig claimed she tripped on, Bryan agreed that it could have been a brick from the ring around his tree and that if it was it was not in its proper place. Thus, Bryan's own testimony created a genuine issue of material fact regarding his knowledge.[4]
 {¶ 22} In regard to the Slomovitzes' second argument, that they did not have a duty to warn Awig of the defect because she knew of it, we similarly find that there is a genuine issue of material fact on that point. The Slomovitzes argue that Awig had "traveled the identical path on multiple occasions. In fact, she had traveled the identical path earlier that same evening. Therefore, any problems, danger, or difficulties in traveling across the lawn, rather than on the paved walkway, sidewalk, and driveway, were known to her." The Slomovitzes go on to argue that Awig was aware that the lawn area was not lit and was covered with leaves and, moreover, she was aware that on occasion the children left their toys in the yard.
 {¶ 23} First, Awig did not testify that she had taken the identical path on numerous occasions, including earlier the same evening of the incident. Rather, she testified that her usual way to get to and from the Slomovitzes' house from her house, and vice versa, was to cut across their lawn. Because a lawn is generally a much more open space than a sidewalk or walkway, it is difficult to demonstrate (absent some identifying feature such as a worn out area in the lawn) that Awig took the identical path.
 {¶ 24} Second, in regard to the toy argument, without more evidence in the record, we are not persuaded that Awig was aware of the dangerous condition of the lawn because she testified that she had seen the children's toys on the lawn before (e.g., tripping over a brick could certainly lead to a different result than tripping over a stuffed animal).
 {¶ 25} Third, in regard to the fact that the lawn was covered with leaves and not lit, we note this court's decision inLawrence v. Moore (June 13, 1991), Cuyahoga App. No. 60505. In that case, the plaintiff, a mailman, filed an action against a homeowner for injuries he sustained when he stepped into a leaf covered hole on the homeowner's front yard after delivering the homeowner's mail. In holding that summary judgment was not appropriate, this court stated that:
 {¶ 26} "Whether traversing the lawns in delivering the mail is reasonable and within the scope of the invitation, or whether this was a regular course of conduct acquiesced in by the defendant, or whether defendant had knowledge of this practice, or of the lawn defect, are genuine issues of material fact which directly affect the factual issues of the status of plaintiff regarding the premises liability of the defendant." Id. at 4.
 {¶ 27} As with Lawrence, there are genuine issues of material fact in this case. Awig testified that it was her practice to walk across the Slomovitzes' lawn. Bryan testified that he never told her that she was not allowed to walk across the lawn.[5]
 {¶ 28} Thus, for all the above-mentioned reasons, to the extent that the trial court's grant of summary judgment was based upon the Slomovitzes' argument that Awig was aware of the defect, it was error.
 {¶ 29} Moreover, we find that to the extent the trial court based its grant of summary judgment in favor of the Slomovitzes pursuant to their argument that the defect was open and obvious it erred. The open and obvious doctrine states that an owner of a premises owes no duty to persons entering those premises regarding dangers that are open and obvious. Sidle v. Humphrey
(1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus. The Supreme Court of Ohio reaffirmed the open and obvious doctrine in Armstrong v. Best Buy, 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088. The open and obvious nature of the hazard itself serves as a warning. Id. at 80. It is the character of the object that is the measure of its open and obvious nature. Thus, invitees may reasonably expect to discover those dangers and take appropriate measures to protect themselves. Id., citing Simmers v. Bentley Constr. Co.,64 Ohio St.3d 642, 644, 1992-Ohio-42, 597 N.E.2d 504. When the open and obvious doctrine is applicable, it obviates the duty to warn and acts as a complete bar to recovery. Armstrong, supra, at 80.
 {¶ 30} Open and obvious hazards are neither hidden or concealed from view nor non-discoverable by ordinary inspection.Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49, 50-51,566 N.E.2d 698. The determination of the existence and obviousness of a danger alleged to exist on a premises requires a review of the facts of the particular case. Miller v. Beer Barrel Saloon (May 24, 1991), 6th Dist. No. 90-OT-050.
 {¶ 31} Consequently, the bench mark for the courts is not whether the person saw the object or danger, but whether the object or danger was observable. See Kirksey v. Summit Cty.Parking Deck, 9th Dist. No. 22755, 2005-Ohio-6742.
 {¶ 32} Upon review, and construing the evidence in a light most favorable to Awig, we find that a genuine issue of material fact exists as to whether the danger was open and obvious. The Slomovitzes argue that Awig had seen bricks on the lawn on prior occasions and, thus, the danger was open and obvious to her. Awig testified, however, as follows on this point:
 {¶ 33} "Q. Had you ever seen bricks in the yard before?
 {¶ 34} "A. I can't answer that. I don't know. I may have at one point in time, but I don't know if it was before [the incident].
 {¶ 35} "Q. So you have some recollection of having seen bricks in the yard, but you are just not sure exactly when you saw them?
 {¶ 36} "A. Yes."
 {¶ 37} Awig's testimony, therefore, does not support the Slomovitzes' argument that she was aware of the open and obvious danger prior to her fall.
 {¶ 38} The Slomovitzes also argue that the defect was open and obvious to Awig because she acknowledged that she had previously seen toys on the Slomovitzes' lawn. As already mentioned, though, comparing toys (at least without more evidence as to the kind of toys) to a brick is not appropriate.
 {¶ 39} We are also not persuaded by the Slomovitzes' argument that the leaves presented an open and obvious condition. Awig did not trip on the leaves; she tripped on a brick.
 {¶ 40} Moreover, the case of Smith v. Gracon (Feb. 24, 2006), Mahoning App. No. 05 MA 125, cited by the Slomovitzes, is distinguishable from this case. In Smith, the open and obvious danger was a broom on a cement driveway. The plaintiff in Smith
testified at deposition that if the broom would have been lying in the driveway all day she would have seen it. Thus, the court found that the broom was observable; its coloring did not cause it to blend into the cement and hide it from the plaintiff's view. The fact that the plaintiff did not see the broom before she tripped over it did not remove its open and obvious status.
 {¶ 41} In this case, however, Awig's contention is that the brick over which she tripped was covered by leaves, was not observable and, thus, was not open and obvious.
 {¶ 42} Accordingly, to the extent that the trial court granted the Slomovitzes' motion for summary judgment based upon the open and obvious doctrine it erred.
 {¶ 43} The final argument made by the Slomovitzes in support of their motion for summary judgment was that Awig assumed the risk. We disagree.
 {¶ 44} Assumption of the risk requires three elements: 1) one must have full knowledge of a condition; 2) such condition must be patently dangerous to him; and 3) he must voluntarily expose himself to the hazard created. Briere v. Lathrop Co. (1970),22 Ohio St.2d 166, 174-175, 258 N.E.2d 597, 603.
 {¶ 45} As already discussed, we do not find that the evidence demonstrated that Awig had full knowledge of the presence of the brick on the Slomovitzes' lawn and, thus, the first prong of assumption of the risk was not met.
Judgment reversed; case remanded.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellees costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., concurs.
 Gallagher, J., concurs in judgment only.
[1] Awig argues in her briefing before this court that this argument was not raised by the Slomovitzes until their reply brief and, thus, it should not have been considered by the trial court because she was not afforded an opportunity to respond to the argument. The Slomovitzes did, however, state the following in their motion for summary judgment: "The Slomovitzes do not have a duty to advise the plaintiff of any unknown defects."
[2] A fourth child, Dawna Slomovitzes' son (then age 13) from a previous marriage, also resided at the home.
[3] The record demonstrates that at the time of the incident Bryan and Dawna were experiencing marital difficulties and at the time Awig initiated her action they were living separate and apart.
[4] In their reply brief, the Slomovitzes stated that Dawna testified at deposition that she did not have any knowledge of any brick. Dawna's deposition (or portions thereof) is not in the record, however.
[5] Bryan never even testified that he was aware Awig cut across his lawn and, as previously mentioned, Dawna's deposition testimony is not in the record.